Case 2:18-cv-00230   Document 20   Filed on 12/12/18 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
December 13, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLES RAY HILL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-230 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION
### TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff Charles Ray Hill's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott,* 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's equal protection claim be retained against one defendant in her official capacity. It is

respectfully recommended further that Plaintiff's remaining claims against all Defendants be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

### I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

### II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. Plaintiff is currently serving consecutive (stacked) life sentences on three convictions for aggravated sexual assault of a child. These convictions were entered on October 4, 2001, in Hopkins County, Texas.

Plaintiff sues the following defendants: (1) TDCJ Director Lorie Davis; and (2) Joni White, the TDCJ Assistant Director - Classifications and Records. Plaintiff claims that his constitutional rights were violated in various respects when the TDCJ applied a new policy to reclassify Plaintiff from his G2 custody classification level to the more restrictive G3 classification level. Plaintiff seeks declaratory and injunctive relief.

A *Spears*[1] hearing was conducted on September 25, 2018. Near the conclusion of the hearing, Plaintiff requested and was granted two weeks to file an amended complaint. Plaintiff was granted two extensions of time, until November 23, 2018, to file his

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

amended complaint. (D.E. 11, 13). Plaintiff subsequently filed his amended complaint in a timely manner.

The following representations were made either at the hearing or in Plaintiff's original and amended complaints: In 2001, Plaintiff entered into the TDCJ prison system and was subsequently classified at the G3 custody level in March 2002. He has resided in the McConnell Unit ever since arriving in TDCJ custody. Plaintiff has received four minor disciplinary cases in his seventeen years in custody, with the last disciplinary case occurring in 2004.

For five years before September 13, 2016, Plaintiff was classified at the G2 custody level. On September 13, 2016, the Unit Classification Committee (UCC) applied a new policy (UCC Policy Procedure 2.00), effective September 1, 2016, to reclassify Plaintiff back to the more restrictive G3 custody level. The new policy applied to any inmate who has stacked sentences where the total amount of time needed to become parole eligible on the stacked sentences exceeds 60 years. The UCC explained to Plaintiff that he was reclassified due to having received three stacked life sentences in Hopkins County.

Plaintiff testified that inmates with a G2 classification may live in less restrictive housing. Inmates classified at the G2 custody level live in dormitories where the door is not locked and inmates can come and go. G3 inmates, on the contrary, are assigned to the main building in a two-man cell where the cell door is locked during the day. As a result of his reclassification, Plaintiff was immediately moved from the dorms and ultimately placed in a more restrictive environment with another G3 custody level

inmate. Plaintiff lives in a two-man cell in a building housing G3 inmates where he cannot move about as freely as in the dorm rooms.

Plaintiff further testified that G2 inmates have access to more favorable jobs than inmates with a G3 classification. Plaintiff lost his job as a clerk in the garment factory as a result of the reclassification and was placed in the kitchen. However, due to his heat restrictions and the fact it is too hot to work in the kitchen, Plaintiff no longer has a work assignment.

Plaintiff testified that: (1) a total of forty inmates at the McConnell Unit with multiple stacked sentences were reclassified from G2 to G3 under the September 2016 policy; and (2) seven to nine other inmates with multiple-stacked life sentences, however, remained living in the dorms and continued to work in their G2 jobs. According to Plaintiff, these inmates with stacked sentences similar to Plaintiff were given back their G2 classification by the end of September 2016.

Plaintiff has attached a set of Step 1 and Step 2 grievances to his original complaint. (D.E. 1, pp. 7-10). In his Step 1 grievance, Plaintiff complained about his reclassification to the G3 custody level, placement in more restrictive housing, and reassignment to a new job. (D.E. 1, p. 7). Plaintiff's Step 1 grievance was rejected. (D.E. 1, p. 8). Likewise, Plaintiff's Step 2 grievance was rejected on the basis it was appropriately addressed at the Step 1 level. (D.E. 1, p. 10). The reviewing officer further noted that offenders with stacked sentences of 60 years or more are not eligible for custody classification levels less restrictive than G3 for their entire incarceration. (D.E. 1, p. 10).

Plaintiff sues Director Davis because she is the head of TDCJ and in charge of TDCJ policies. Joni White, the Assistant Director of Classifications, made the decision to move Plaintiff to a G3 classification level based on the new policy effective September 1, 2016. Plaintiff believes that Director Davis has the ultimate power to reclassify Plaintiff back to his earlier G2 classification. Plaintiff only seeks declaratory and injunctive relief in the form of being returned to a G2 custody classification level and placement back in his original housing and job.

### III. LEGAL STANDARD.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an

indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

## IV. DISCUSSION

### A. *Ex Post Facto*

In his amended complaint, Plaintiff claims that Defendants have violated the Ex Post Facto Clause because the retroactive application of UCC Policy Procedure 2.00 in setting Plaintiff's custodial classification level at G3 has deprived Plaintiff of less restrictive housing as well as the opportunity for more favorable educational and employment opportunities.

The United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. Art. I, § 10. As the Fifth Circuit has explained, "'[o]ne function of the *Ex Post Facto Clause* is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission.'" *Casterline v. Thaler,* 494 F. App'x 500 502 (5th Cir. 2012) (quoting *Garner v. Jones,* 529 U.S. 244, 249 (2000)). For example, changes to parole laws may run afoul of the *Ex Post Facto* Clause if they "create[ ] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* (quoting *Garner,* 529 U.S. at 250). However, changes that "create[ ] only a speculative and attenuated risk of increasing the measure of punishment" do not implicate the *Ex Post Facto* Clause. *Id.* at 503 (citing *California*

*Dep't of Corr. v. Morales,* 514 U.S. 499, 509 (1995); *Hallmark v. Johnson,* 118 F.3d 1073, 1078 (5th Cir. 1997)).

In general, "guidelines promulgated by a regulatory body cannot violate the prohibition against *ex post facto* laws." *See Ward v. Dretke*, C-05-464, 2006 WL 1291824, at *3 (S.D. Tex. May 8, 2006) (citing *Sheary v. Parole Com'n*, 822 F.2d 556, 558 (5th Cir. 1987)). In Texas, because the TDCJ has the authority to classify and reclassify inmates, any "change in [a prisoner's] classification does not amount to a change in the 'law' for the purposes of an *ex post facto* challenge." *Ward*, 2006 WL 1291824, at *3.

Plaintiff complains that the TDCJ's new policy contained in UCC Policy Procedure 2.00, effective in September 2016, caused him to be reclassified at the G3 level. Such reclassification to the more restrictive G3 custodial level, however, neither amounts to a change in law nor effectively increases the measure of Plaintiff's punishment. *See Ward*, 2006 WL 1291824, at *3. *See also Welch v. Epps*, 103 F. App'x 828, 829 (5th Cir. 2004) (recognizing that a change in custodial status does not amount to an increase in the measure of punishment for *ex post facto* purposes). Accordingly, the undersigned respectfully recommends that Plaintiff's *ex post facto* claim against Defendants be dismissed for failure to state a claim and/or as frivolous.

B.  **Due Process**

Plaintiff next claims that Defendants have violated his due process rights because: (1) the application of the new policy has deprived Plaintiff of less restrictive housing as well as the opportunity for more favorable educational and employment opportunities;

and (2) he has a liberty interest in remaining classified at the G2 custodial level. Plaintiff contends that he earned his G2 custody classification level and that the decision to reclassify him at G3 ignores his time spent as a model inmate at the G2 level.

It is well settled that a prisoner has no liberty interest in his custodial level or classification unless he can demonstrate that it imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "The difference between administrative segregation and general population is much greater than the difference between G-2 and G-3, both of which are general population classifications." *Lane v. Director, TDCJ-CID*, No. 6:17-CV-504, 2017 WL 8681965, at *2 (E.D. Tex. Dec. 7, 2017). Yet, "an inmate's placement in administrative segregation, without more, does not constitute the deprivation of a constitutionally protected liberty interest." *Id*. (citing *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

Plaintiff's allegations, accepted as true, fail to state a due process claim. His placement in a more restrictive housing environment along with limitations as to job assignments and educational opportunities upon being reclassified to a G3 custody level fail to constitute atypical or significant hardships or otherwise implicate a liberty interest. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998). *See also Blair v. Davis*, No. 5:17-CV-276, 2018 WL 1083620, at *2 (N.D. Tex. Feb. 28, 2018) (holding that prisoner's G5 custody status and placement in restrictive housing with no windows and constant fluorescent lighting fails to meet the

*Sandin* standard). Because Plaintiff's allegations fail to state a liberty interest in maintaining a G2 custodial classification, the undersigned respectfully recommends that Plaintiff's due process claim against Defendants be dismissed for failure to state a claim and/or as frivolous.

### C. Equal Protection

Lastly, Plaintiff claims that his equal protection rights as a "class of one" have been violated because the implementation of the new internal classification policy treats him differently than inmates who are similarly situated. Plaintiff states that inmates having similar stacked sentences are being treated more favorably with their custody classification levels, living arrangements, and work assignments.

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The Equal Protection Clause directs that similarly situated people should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group. *Id.* An equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges that he has been singled out as a so-called "class of one." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)). A plaintiff makes a "class of one" claim when he alleges that he has been intentionally treated differently from

9 / 12

others similarly situated without a rational basis for the difference in treatment. *Id.* (citing *Olech*, 528 U.S. at 564).

Plaintiff testified at the *Spears* hearing that seven to nine other inmates at the McConnell Unit with multiple-stacked life sentences were considered under UCC Policy Procedure 2.00 but were ultimately given back their G2 classification by the end of September 2016. According to Plaintiff, these inmates have remained in the prison dorms and have received their old G2 jobs back. Plaintiff's allegations suggest that other inmates similarly situated to him are receiving more favorable treatment and that no rational basis exists for the difference in treatment. *See Lane*, 2017 WL 8681965, at *2 (dismissing prisoner's equal protection claim because he failed to identify any other similarly-situated inmates having sentences equivalent to life without parole that were permitted to have G2 custody level status).

With respect to Plaintiff's request for declaratory and injunctive relief, TDCJ Director Davis appears to be the individual most likely able to fashion the relief Plaintiff is seeking should he prevail on his equal protection claim. At the *Spears* hearing, Plaintiff expressed his belief that TDCJ Director Davis is more likely than Assistant Director White to have the authority to grant Plaintiff the injunctive relief he seeks. Because TDCJ Director Davis is the best person to implement the injunctive relief requested, the undersigned respectfully recommends that Plaintiff's equal protection claim be retained as to Defendant Davis in her official capacity only and dismissed as to Defendant White.

## V. CONCLUSION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state an equal protection claim against **TDCJ Director Davis** in her official capacity for injunctive and declaratory relief. Accordingly, it is respectfully recommended that this claim against her be **RETAINED.** The undersigned will order service as to **TDCJ Director Davis** by separate order. It is respectfully recommended that all remaining claims and Defendant White be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted on this 12th day of December, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon

grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).