United States District Court
Southern District of Texas
**ENTERED**
August 10, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLES RAY HILL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-230 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION TO GRANT DEFENDANT DAVIS'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Charles Ray Hill is a Texas inmate appearing *pro se*. In this prisoner civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff claims that his equal protection rights were violated when his custody classification level was adjusted to a more restrictive level. Pending before the Court is a Motion for Summary Judgment filed by Defendant Lorie Davis. (D.E. 42). For the reasons stated herein, it is respectfully recommended that the Court **GRANT** Defendant Davis's motion.

### JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

### PROCEDURAL BACKGROUND

Plaintiff is a prisoner at the McConnell Unit of the Texas Department of Criminal Justice (TDCJ). He sues TDCJ Director Lorie Davis. Plaintiff claims that his equal protection rights were violated when the TDCJ applied a policy to reclassify Plaintiff

from his G2 custody classification level to the more restrictive G3 classification level. In addition to declaratory relief, Plaintiff seeks injunctive relief in the form of being returned to G2 custody classification level, his previous housing in the dormitories, and his former job of clerk in the garment factory. (D.E. 1, pp. 4–5).

Following a *Spears*[1] hearing, United States Magistrate Judge B. Janice Ellington issued a Memorandum and Recommendation (M&R) on December 12, 2018, recommending in pertinent part that the Court retain Plaintiff's equal protection claim for declaratory and injunctive relief against Director Davis in her official capacity. (D.E. 20, pp. 10–11). Magistrate Judge Ellington ordered service of Plaintiff's complaint and amended complaint on Director Davis. (D.E. 19, pp. 1–2).

On August 19, 2019, Senior United States District Judge Hilda Tagle adopted the M&R. (D.E. 29). On April 13, 2020, Director Davis filed her motion for summary judgment. (D.E. 42). Plaintiff subsequently filed his response. (D.E. 47).

**SUMMARY JUDGMENT EVIDENCE**
Director Davis offers the following summary judgment evidence:

Exh A:    Plaintiff's relevant TDCJ Unit Classification records (D.E. 42-1).

Exh B:    Plaintiff's relevant grievance records (D.E. 42-2).

Exh C:    Affidavit of Debra Gibbs (D.E. 42-3).

Exh D:    TDCJ Unit Classification Committee (UCC) Procedure Manual 2.00 (D.E. 42-4).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff, in turn, has attached the following documents and portions of documents to his response to Defendant Davis's summary judgment motion:

Exh A: An excerpt from a brief purportedly filed by TDCJ in *Stone v. Warden Furr, et al.* (no citation was provided nor found) (D.E. 47-1, pp. 3–6).

Exh B: TDCJ Unit Classification Committee (UCC) Procedure Manual 2.00 (D.E. 47-1, pp. 8–11).

Exh C: Defendant's Objections and Responses to Plaintiff's First Request for Production of Documents Nos. 6–9 (D.E. 47-1, p. 13).

Exh D: United States Magistrate Judge Julie K. Hampton's order of January 31, 2020, pages 2–5. (D.E. 47-1, pp. 15–18).

Lastly, Plaintiff's verified complaint, attachments thereto, and testimony at the *Spears* hearing may serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar 20, 2017). Like other parts of the record, Plaintiff's verified complaint and *Spears*-hearing testimony must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*, No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c).*") (emphasis added) (citations omitted).

The undersigned, therefore, will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would

inadmissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the competent summary judgment evidence establishes the following.

**Plaintiff's Evidence**

*(1) Plaintiff's Verified Complaint and Spears Hearing Testimony*

Plaintiff entered into the TDCJ prison system in October 2001 and was classified at the G3 custody level in December 2001 or early 2002. (D.E. 1, pp. 2-3). In 2011, Plaintiff was reclassified to the G2 custody level and subsequently moved into the prison dormitories. (D.E. 1, pp. 2-3). As a G2 inmate, Plaintiff was assigned to work in the garment factory. (D.E. 1, p. 2).

On September 13, 2016, the UCC applied a new policy, effective September 1, 2016, that reclassified Plaintiff back to the more restrictive G3 custody level. (D.E. 1, p. 2; D.E. 18, pp. 3–4). The new policy applies to any inmate serving consecutive sentences who must serve at least 60 years before becoming eligible for parole. (D.E. 1, p. 10; D.E. 18, pp. 3–4). The UCC explained to Plaintiff that he was reclassified due to having received three consecutive life sentences. (D.E. 1, pp. 2, 10).

*(2) Plaintiff's Additional Evidence*

Plaintiff attached as evidence to his response to Defendant Davis's motion for summary judgment a portion of a brief purportedly from a case captioned *Stone v. Warden Furr, et al.* (citation not found), an updated version of the TDCJ UCC Procedure Manual adopted in September 2016 (substance discussed *infra*), and documents that comprise the record in this case, including an excerpt from Defendant Davis's Objections

and Responses to Plaintiff's First Request for Production of Documents as well as a portion of the undersigned's January 31, 2020 order.

**Director Davis's Evidence**

The TDCJ set forth the purpose and criteria for custody level assignments in its Unit Classification Procedure. This policy provides:

> The purpose of custody assignment shall be to ensure each offender in TDCJ receives appropriate and adequate supervision and housing commensurate with the changing needs and requirements during his/her incarceration. Custody assignments shall be primarily influenced by institutional adjustment factors and sentence length; however, factors such as prior criminal record, prior institutional adjustment and current offense of record may be considered when making initial classification decisions related to custody. Custody assignment shall serve to indicate the type of housing required (cell or dormitory), the level of supervision required by the offender, and the appropriate job assignment.

(D.E. 42-4, p. 3).

Debra Gibbs, Assistant Director of the TDCJ Classification and Records Office (TDCJ-CRO) provides the following relevant information regarding Plaintiff's convictions, his custody status, and the applicable TDCJ policies and regulations. Plaintiff is currently serving three life sentences for aggravated sexual assault of a child. (D.E. 42-3, p. 2). Plaintiff entered TDCJ custody on October 25, 2001, and his sentences are running consecutively (i.e., stacked). (D.E. 42-3, p. 2).

In 2002, the TDCJ introduced three minimum custody levels, referred to as G1, G2, and G3, with G1 being the least restrictive custody level an offender can obtain in a unit's general population. (D.E. 42-3, p. 2). Offenders assigned the G3 custody level, as opposed to G2, are not allowed to live in dormitories outside the main prison buildings

and are not allowed to be assigned jobs that would allow access to multiple areas of the prison unit. (D.E. 42-3, p. 3).

In 2005, the Texas Legislature created a sentencing option of life without parole for certain convictions under "Jessica's Law." (D.E. 42-3, p. 3).[2] The TDCJ then determined that no offender serving life without parole would reach a custody level less restrictive than G3. (D.E. 42-3, p. 3).[3]

In 2016, the TDCJ determined that offenders with consecutive sentences who must serve at least 60 years flat time before they are eligible for release are serving the "'consecutive equivalent' of life without parole." (D.E. 42-3, p. 3).

Thus, in September 2016, the TDCJ set forth its revised policy in the Unit Classification Procedure Manual. The revised policy reflects in relevant part that: "offenders with consecutive sentences who must serve a minimum of 60 years flat time (CU60) before they are eligible for release are serving the 'consecutive equivalent' of life without parole and should, like offenders serving life sentences without parole, reach no higher than the G3 custody level ever." (D.E. 42-3, p. 3; D.E. 42-4, p. 4). As a result of this decision, approximately 900 offenders were reclassified from G2 to G3 due to having convictions for Jessica's Law offenses. (D.E. 42-3, p. 3).

A small group of offenders that were reclassified from G2 to G3 were returned to G2 custody when an error was discovered in the way their consecutive time was calculated. (D.E. 42-3, p. 3).

---

[2] *See Rivas v. Thaler*, No. 3:06-CV-344-B, 2010 WL 1223130, at *16 n.8 (N.D. Tex. Jan. 22, 2010).

[3] *See Lane v. Director, TDCJ-CID*, No. 6:17cv504, 2017 WL 8681935, at *2 (E.D. Tex. Dec. 7, 2017) (citing *Estrada v. State*, 313 S.W.3d 274, 287 (Tex. Crim. App. 2010)).

Fifty-eight offenders with consecutive sentences who were reclassified to G3 were later returned to G2. (D.E. 42-3, p. 3). Of these 58 offenders, 20 were reclassified to G3 in error because they had served sufficient time in G3 custody. (D.E. 42-3, p. 3). Assistant Director Gibbs set forth the following three reasons as to why the remaining 38 offenders were returned to G2: (1) 13 offenders committed offenses before September 1, 1993 that only required one-quarter of the sentence to be served day-for-day rather than 30 calendar years for a life sentence; (2) 11 offenders had non-aggravating offenses requiring one-quarter to be served with good-time plus flat time, that were incorrectly counted as aggravated requiring half flat time; and (3) 14 offenders had offenses that for a combination of the two previous reasons, when recalculated, did not have to serve 60 years flat time. (D.E. 42-3, p. 3). All but two of the offenders are serving a life sentence. (D.E. 42-3, p. 3).

Because Plaintiff's offenses all occurred after September 1, 1993, he is required serve 30 calendar years on each of his three stacked sentences for a total of 90 years. (D.E. 42-3, p. 3).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–2.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. Pro. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curium) (refusing to consider affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain the burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. Pro. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual

issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250–51.

V.   **DISCUSSION**

   A.   **Equal Protection**

Plaintiff claims that his equal protection rights as a "class of one" have been violated because the implementation of the September 2016 internal classification policy treats him differently than inmates who are similarly situated. Plaintiff asserts that inmates who were previously classified at the G3 are being treated more favorably with their custody classification levels, living arrangements, and work assignments.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). To establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).

To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted). If a suspect class (such

9 / 17

as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny." *Id.* at 353-54. If not, the courts apply "rational basis review," and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose." *Id.* at 354. The Equal Protection Clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Wood*, 836 F.3d at 538–39 (internal quotation marks and citation omitted).

A class of one claim for equal protection alleges differential treatment that is not based on membership in a suspect class or on the infringement of a fundamental right. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008); *Wood*, 836 F.3d at 539. Such a claim requires the plaintiff to show that "(1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.* (internal quotation marks and citation omitted).

A plaintiff must show "that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002)). "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Little v. Texas Attorney General*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).

In her Motion for Summary Judgment, Director Davis contends that Plaintiff's class of one equal protection claim fails as a matter of law. (D.E. 42, pp. 6–9). Davis contends that: (1) Plaintiff has failed to show that he was treated differently from others similarly situated (D.E. 42, pp. 6–9); and (2) TDCJ has demonstrated a rational basis for its 2016 changes to the offender classification policy (D.E. 42, pp. 9–11).

Plaintiff responds that he has established a class of one equal protection claim as a matter of law. (D.E. 47, p. 5). Plaintiff contends that he is similarly situated to certain G2 custody inmates and that he is being treated less favorably than these inmates. (D.E. 47, pp. 5–7). Plaintiff argues that the new classification policy has no rational relationship to any legitimate government objective because restoring some inmates to the G3 level from the G2 level based on security concerns assumes illicitly that inmates with longer sentences are more prone to attempt escape and that his individual intentions cannot be known by TDCJ. (D.E. 47, p. 9). Plaintiff also argues that because certain G3 inmates remain eligible for reclassification to a less restrictive custody level after five or ten years, custody levels are based, at least in part, on time served and not sentence length. (D.E. 47, p. 11). Plaintiff asserts, therefore, that he has been subjected to purposeful discrimination under a class of one theory. (D.E. 47, pp. 14–15).

Director Davis has presented competent summary judgment evidence showing that the TDCJ's 2016 Classification Procedure policy classifies offenders based upon the length of their sentences, the nature of their sentences (concurrent or stacked), and the total amount of flat time that must be served. (D.E. 42-2, p. 16; D.E. 42-3, pp. 2–3; D.E. 42-4, pp. 3–4). Additional factors, which affect an individual's custody classification,

include an inmate's physical and mental health, disciplinary history, and prior criminal history. (D.E. 42-4, pp. 5–9).

The TDCJ determined that offenders serving consecutive sentences of 60 years of flat time should be treated the same as offenders serving life without parole. (D.E. 42-3, p. 3). The TDCJ amended the offender classification procedure in September 2016 to reflect that determination. (D.E. 42-3, p. 3). Thus, like offenders serving life without parole, the September 2016 offender classification procedure does not allow offenders serving the "consecutive equivalent" of life without parole to reach a custody less restrictive than G3. (D.E. 42-3, p. 3).

Based on the uncontroverted summary judgment evidence presented, Plaintiff has failed to offer a similarly-situated comparator who was treated more favorably than he pursuant to the September 2016 offender classification procedure. Ms. Gibbs stated in her affidavit that, based on Plaintiff's three consecutive life sentences, he must serve 90 years of flat time before becoming eligible for release on parole. (D.E. 42-3, p. 3).

Plaintiff cites to a brief purportedly submitted by Director Davis in another case in which she stated that 228 inmates were awaiting reclassification from G2 to G3 as of April 2019. Plaintiff further states that he learned of an email request that offenders participating in a program at another TDCJ unit be exempted from the policy change. (D.E. 47, p. 6). Plaintiff, however, has not provided the email or any competent summary judgment to support his theory that any similarly-situated inmates were being treated more favorably under the new policy.

Plaintiff also claims without evidentiary support that another inmate (offender Archer) retained G2 status and continued to reside in the dorms, even though Archer was scheduled to be returned to the G3 custody level. (D.E. 47 at 4). Plaintiff provides no competent summary judgment evidence setting forth offender Archer's sentence length or factors affecting Archer's custodial assignment. Thus, Plaintiff identifies no other offender having to serve consecutive sentences requiring 60 years of flat time being treated more favorably in custodial assignment.

Plaintiff offers no competent evidence to support his claim that he is being treated differently than other similarly situated offenders in TDCJ custody. Plaintiff, like all other inmates in TDCJ custody, is subject to the TDCJ classification policies. The TDCJ's classification policies explicitly assign prisoners to custody levels based on the length of their sentences, the nature of their sentences (concurrent or stacked), the total amount of flat time required, and additional factors such as disciplinary history and institutional adjustment. (D.E. 42-3, pp. 2-3; D.E. 42–4, pp. 3–4, 5–9).

The undersigned next considers whether the TDCJ has demonstrated a rational basis for its 2016 changes to the offender classification policy (D.E. 42, pp. 9–11). In determining whether there is a rational basis for the TDCJ's treatment of Plaintiff under its September 2016 classification policy, the Court must evaluate whether a conceivable rational basis exists for the official action. *See Duarte*, 858 F.3d at 355. "The burden is on the challenging party to counter any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal quotations and citations omitted). Great deference is accorded to prison administrators' adoption and

implementation of policies needed to ensure order and security. *See Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

The competent summary judgment evidence presented demonstrates a rational basis for TDCJ's 2016 change to its classification policy. In 2005, the Texas Legislature created a sentencing option of life without parole for certain offenses. (D.E. 42-3, p. 3). In response, the TDCJ reviewed offender custody levels and subsequently determined that offenders serving life without parole would not reach a custody level less restrictive than G3. (D.E. 42-3, p. 3). In 2016, the TDCJ determined that any offender required to serve at least 60 years of flat time is serving the "'constructive equivalent' of life without parole." (D.E. 42-3, p. 3).

In forwarding legitimate penological interests such as prison security and safety, it is rational that inmates with stacked sentences and who are required to serve 60 years of flat time—the consecutive equivalent of life without parole—are treated similarly in their custodial classification assignment to inmates serving life without parole. Plaintiff has presented no evidence to suggest that the basis for TDCJ's revision to the classification procedures in September 2016 was irrational or otherwise inconceivable. Furthermore, Plaintiff has produced no evidence that the September 2016 UCC revisions were implemented to purposely discriminate against him or to adversely impact him in relation to other similarly situated inmates serving stacked sentences.

In sum, viewing the competent summary judgment evidence in the light most favorable to Plaintiff, no genuine issues of material fact exist as to whether Plaintiff can demonstrate that he was intentionally treated differently from others similarly situated

and that there was no rational basis for any difference in treatment. Plaintiff, therefore, cannot establish as a matter of law a class of one equal protection claim. Accordingly, Director Davis's summary judgment motion (D.E. 42) should be granted on this claim against her in her official capacity.

### B. The Eleventh Amendment Bar

The undersigned now turns to the issue of whether Plaintiff's equal protection claim against Director Davis also is barred by the Eleventh Amendment. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted). Thus, the *Ex parte Young* exception applies when (1) a plaintiff has pled a valid claim for a violation of federal law against a state official responsible for enforcing the law at issue in that person's official capacity; (2) the claim seeks only prospective injunctive relief; and (3) the claim seeks to address a "continuing violation of federal law." *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).

Because Plaintiff has failed to demonstrate an equal protection claim as a matter of law, there exists no ongoing or continuing violation of federal law to address through prospective injunctive relief. Accordingly, the Eleventh Amendment bars Plaintiff's class of one equal protection claim.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Director Davis's Motion for Summary Judgment (D.E. 42) be **GRANTED** because: (1) the competent summary judgment evidence demonstrates that Plaintiff has failed to show a class of one equal protection claim against Director Davis in her official capacity; and (2) Plaintiff's claim seeking injunctive relief against Director Davis is barred by the Eleventh Amendment.

Respectfully ssubmitted this 10th day of August, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).